UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TRUSTEES OF THE NEVADA RESORT ASSOCIATION-INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA LOCAL 720 PENSION TRUST, et al.,

    Plaintiffs,

v.

ALL ACCESS SUPPORT GROUP, et al.,

    Defendants.

2:10-CV-1888 JCM (RJJ)

**ORDER**

Presently before the court is plaintiffs Trustees of the Nevada Resort Association-International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust ("pension trust"); Trustees of the Nevada Resort Association-International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Wage Disability Trust ("wage disability trust"); and Trustees of the Nevada Resort Association-International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Apprentice and Journeyman Training and Education Trust's ("training trust") (collectively referred to as "International Alliance trust funds") motion for entry of default judgment against defendants

1  All Access Support Group (hereinafter "All Access") and Access Event Staffing (hereinafter "Access
2  Event"). (Doc. #9).
3      This case stems from the alleged failure of defendants to contribute all required International
4  Alliance trust funds contributions on behalf of their employees. (Doc. #9). As stated in the complaint
5  (doc. #1), the trustees of the pension trust, wage disability trust and training trust are the fiduciaries
6  of the International Alliance trust funds for purposes of the Employee Retirement Income Security
7  Act of 1974 ("ERISA"). Defendant All Access acted as an employer within the State of Nevada, and
8  employed persons (hereinafter "covered employees") to perform work under a collective bargaining
9  agreement between All Access and International Alliance of Theatrical Stage Employees and
10 Moving Picture Machine Operators of the United Sates and Canada, Local 720.
11     The International Alliance trust funds are ERISA employee benefit trust funds that provide
12 pension, wage disability and training benefits to covered employees, and that the collective
13 bargaining agreement incorporates by reference the trust agreements establishing the International
14 Alliance trust funds. (Doc. #9). Under the terms of the collective bargaining agreement and the trust
15 agreements, All Access is "obligated to contribute to the [International Alliance] [t]rust [f]unds on
16 behalf of its [c]overed [e]mployees" and "to make its books and records available for review." *Id.*
17     According to the present motion (doc. #9) and the complaint (doc. #1), defendant All Access
18 failed to contribute to the International Alliance trust funds as required, and failed to make its books
19 and records available to determine whether all required contributions had been made. Plaintiffs
20 allege that Access Event was formed in 2010[1], by Robbie Cherrie, the owner and operator of All
21 Access, "in order to avoid and evade the collectively-bargained obligations of All Access." (Doc.
22 #9). Further, they allege that Access Event was "in essence," the same trade or business that was
23 previously called All Access," because the businesses have "one or more common owners and/or
24 are owned by members of the same family," have a "common controlling principal, common
25 workforce, [and] common client base," and the only difference is that All Access was union and
26
27     [1] The record reflects that All Access is a revoked Nevada corporation that ceased to operate
28 prior to the incorporation of Access Event.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  Access Event is nonunion. *Id.*

2  Specifically, they assert that Access Event is a nonunion business in the same geographical
3  area that provides the same types of nonunion event support as All Access, employs union members
4  to perform the same type of work they formerly performed for the union company, and uses the
5  promotional statement; "today's world [the] UNION is NOT the big thing any more." (Emphasis
6  supplied). Plaintiffs argue that Access Event is merely "a disguised continuance of All Access," i.e.
7  an alter ego, and, as such, is bound to the terms of the collective bargaining agreement and is liable
8  for the delinquent contributions.

9  Plaintiffs filed their complaint (doc. #1) on October 27, 2010, against Access Event and All
10 Access for delinquent contributions and alter ego liability. Both defendants were served on
11 November 18, 2010 (docs. #5&6), yet failed to retain counsel or respond to the complaint in any
12 manner. On December 8, 2010, plaintiffs filed a motion for entry of clerk's default for failure to
13 answer pursuant to Federal Rule of Civil Procedure 55(a). (Doc. #7). The clerk entered default
14 against defendants on December 9, 2010. (Doc. #8). Plaintiffs filed the present motion for default
15 judgment on April 4, 2011. (Doc. #9).

16 **Motion for Default**

17 In the present motion for entry of default judgment (doc. #9), plaintiffs ask this court to enter
18 default judgment against defendants All Access and Event Access, jointly and severally, in the
19 amount of $342,381.00. Plaintiffs assert that this amount is appropriate because, as more fully
20 discussed below, defendants are liable for the delinquent contributions, plus the interest on the
21 unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and anticipated
22 attorney's fees as required by ERISA. (Doc. #9).

23     **A.**    **Jurisdiction**

24 Before the court can enter default against a party who fails to plead or otherwise defend, "a
25 district court has an affirmative duty to look into its jurisdiction over both the subject matter and the
26 parties." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).

**James C. Mahan**
**U.S. District Judge**

- 3 -

### 1. Subject Matter Jurisdiction

Under 28 U.S.C. § 1441(b), this court has original jurisdiction over claims that turn on a substantial question of federal law. *Ultramor America, Ltd. V. Dwell,* 900 F.2d 1412, 1414 (9th Cir. 1990). Here, plaintiffs' claims were brought under the employment laws of the United States, specifically, ERISA, 29 U.S.C. § 1132(A)(3), 29 U.S.C. § 1145; and 29 U.S.C. § 185(a). Therefore, this court has subject matter jurisdiction over the case. 28 U.S.C. § 1441(b).

### 2. Specific Personal Jurisdiction/Venue

The long-arm statute in Nevada permits the court to exercise personal jurisdiction to the extent permitted by the United States Constitution. *See Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). *Int'l Shoe v. Washington*, 326 U.S. 310 (1945) provides the court with a two part test to determine personal jurisdiction; (1) "whether the defendant purposefully established 'minimum contacts' in the forum state," and (2) "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (internal quotation omitted).

Here, both defendants are Nevada corporations, operating in Nevada, and hiring Nevada residents to work events held in Nevada. As such, defendants have more than the 'minimum contacts' required for personal jurisdiction, and bringing them to court in Nevada does not "offend traditional notions of fair play and substantial justice." *Id.* Since the court has established that it has personal jurisdiction over the defendants, this court is also the proper venue for the case under 28 U.S.C. § 1400(b).

### B. Federal Rule of Civil Procedure 55(b)

Pursuant to Federal Rule of Civil Procedure 55(b), following the clerk's entry of default against the defendants under rule 55(a), a court may enter default judgment against the defendants upon motion by the plaintiffs. *See Playboy Enters. Int''l, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1038–39 (D. Nev. 2004); *Ring Central, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1057 (N.D. Cal. 2010). Here, the clerk entered default against defendants on December 9, 2010 (doc. #8), for failing to plead or otherwise defend, thereby making plaintiffs' motion for default judgment (doc. #9)

**James C. Mahan**
**U.S. District Judge**

- 4 -

proper.

The court looks at the following factors to determine if entering default judgment is appropriate; (1) the possibility of prejudice to the plaintiffs, (2) the merits of plaintiffs' substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986) (*citing* 6 Moore's Federal Practice § 55.31 (3d ed. 1997)); *see Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No.: 2:05-cv-01532-RLH-GWF, 2008 U.S. Dist. LEXIS 50839, at *11–12 (D. Nev. July 1, 2008) (same).

### 1. Prejudice To The Plaintiff

It is the court's position that the plaintiffs and the covered employees will be substantially prejudiced if default judgment is not entered. As defendants have failed to respond to the complaint or attempts via emails and letters to contact them, plaintiffs "will be left without a remedy if default judgment is not entered in their favor." *See RingCentral*, 711 F. Supp. 2d at 1058. Therefore, this factor weighs in favor of entering the default.

### 2. Merits of the Claim/Sufficiency of the Complaint

The second two factors deal with whether the plaintiffs have plead facts to support a claim on which they may recover. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175–76 (C.D. Cal. 2002), *Koninklijke*, 2008 U.S. Dist. LEXIS 50839, at *12–13 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D.494 (C.D. Cal. 2003)). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes*, 559 F.2d at 560 (citing *Pope v. United States*, 323 U.S. 1, 12, (1944)); *see also* Fed. R. Civ. P. 8(b)(6).

As previously mentioned, the court entered default against defendants in December of 2010. (Doc. #8). Since the clerk's default was properly entered, the facts alleged in the complaint, specifically, the fact that the defendants have failed to pay the contributions as required and the fact that Access Event was created for the sole purpose of evading these payments, are accepted as true.

James C. Mahan
U.S. District Judge

- 5 -

1  Further, the plaintiffs have provided the court with substantial evidence and documentation to
2  support their claims for relief. (Doc. #9-1 thru #9-5 Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10). Thus,
3  the second and third factors weigh in favor of entering default judgment against the defendants.

4  **3.   Sum of Money At Stake**

5  Plaintiffs contend that the amount of money at stake is $342,381.00. As fully discussed in
6  section C below, the plaintiffs have demonstrated that this amount accurately represents the amount
7  owed to the covered employees and the interest and fees available under ERISA. Further, as
8  defendants have not defended themselves in any manner or disputed the amount, the court has no
9  basis in law or fact for concluding otherwise. This factor favors entering default judgment against
10 the defendants.

11 **4.   Possibility of A Dispute Concerning Material Facts**

12 As previously mentioned, defendants accepted service of the complaint (docs. #5 and #6),
13 yet have failed to dispute the allegation that Access Event, the alter ego of All Access, was created
14 to avoid paying the required contributions, and that this resulted in delinquent contributions. Further,
15 there is substantial evidence on the record that supports the plaintiffs' allegations and negates the
16 possibility of any dispute over the facts of the case. (Doc. #9-1 thru #9-5 Exhibits 1, 2, 3, 4, 5, 6, 7,
17 8, 9, and 10). Therefore, the court has no grounds to dispute the legitimacy of plaintiffs' claims, and
18 is inclined to enter default judgment against defendants.

19 **5.   Excusable Neglect**

20 Once again, defendants were properly served with the complaint (doc. #1), and not only had
21 knowledge of the allegations against them through letters from the auditors (doc. #9-2 Exhibit 7),
22 but the owner of both corporations, Mr. Cherrie, actually acknowledged the allegations in the emails
23 presented to the court (doc. #9-2 Exhibit 8). As this demonstrates the defendants' "familiarity with
24 legal processes" and a deliberate failure to respond, the neglect is not excusable. *See TCI Grp. Life*
25 *Ins. Plan v. Knoebber*, 244 F.3d 691, 699 n.6 (9th Cir. 2001), overruled on other grounds, *Egelhoff*
26 *v. Egelhoff*, 532 U.S. 141 (2001) ("we have tended to consider the defaulting party's general
27 familiarity with legal processes or consultation with lawyers at the time of the default as pertinent

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith."). Therefore, this factor weighs heavily towards entering default judgment against defendants All Access and Access Event.

### 6. Public Policy

Lastly, when, as here, defendants fail to defend after acknowledging the complaint, they have "forfeited any right to have the case heard on its merits." *See PepsiCo*, 238 F. Supp. 2d at 1177 (stating that "[d]efendant's failure to answer [p]laintiffs' [c]omplaint makes a decision on the merits impractical, if not impossible," and "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action"); *Koninklijke*, 2008 U.S. Dist. LEXIS 50839, at *19. Further, the court entering default judgment promtoes the public policy of enforcing collective bargaining agreements and requiring businesses to pay the necessary contributions. This factor supports a finding that entering default judgment is proper.

### C. Relief Sought

In the plaintiffs' complaint (doc. #1), they seek "judgment against All Access and Access Event in an amount demonstrated at trial for unpaid contributions, liquidated damages, interest, court costs and attorneys' fees as required by ERISA." As the relief sought in the motion for default judgment (doc. #9) mirrors that sought in the complaint (doc. #1-1), the relief that plaintiffs seek is appropriate. Fed. R. Civ. P. 54(c) (providing that default judgment entered against a party "must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### 1. Possible Relief Under The Governing Documents and ERISA.

Plaintiffs assert that under the collective bargaining agreement, the trust agreements, and International Alliance trust funds' governing documents, "any employer that is delinquent on its [t]rust [f]unds' contributions must pay 18% interest on those contributions, from the due date to the date of payment in full." (Docs. #9-1 and #9-2 Exhibits 1, 2, 3, 5, and 6). Further, the International Alliance trust funds' governing documents, as well as ERISA, establish that the "delinquent employer is also liable for liquidated damages equal to 20% of the delinquent contributions or the interest due at the [t]rust [f]unds' rate, whichever is greater." (Doc. #9-1 and #9-2 Exhibit 2, 3, 4,

James C. Mahan
U.S. District Judge

- 7 -

1  5, and 6)**;** *See* 29 U.S.C § 1132(g).

2  Additionally, section 4.2 of the trust agreement (doc. #9-1 Exhibit 1) states that upon determination of delinquency, the plaintiffs may recover "[r]easonable attorney's fees wherever legal action is required to collect contributions, reports or audit cooperation...; reasonable costs of the action and of ascertaining the extent of the delinquency; and such other legal and equitable relief as may be appropriate under the circumstances."

### 2.     **Calculating the Relief**

#### a.     **Unpaid Contributions**

In calculating the relief, the trust agreements permit the International Alliance trust funds and their designees to conduct contract compliance reviews, i.e. audits, of All Access's payroll and related records. (Doc. #9-1 and #9-2 Exhibits 2, 3, 4, 5, and 6). Under 29 U.S.C. § 1059, All Access is required to keep such records and make them available in the event that verification of contributions is required. Despite many attempts by the plaintiffs to acquire these documents, the defendants have refused to comply with ERISA and have failed to provide their records and books to the plaintiffs.[2] Consequently, the plaintiffs are unable to calculate the exact amount of delinquent contributions. (Doc. #9).

However, the plaintiffs are not left without a remedy. In the event that an employer refuses to produce the requested records, the governing documents provide an alternative method of presuming the contribution amount. (Doc. #9-1 Exhibits 2, 3, and 4). Section 4.3 of the trust agreement states that "a presumption shall arise that all work by the [e]mployer's [e]mployees is work for which contributions to the [t]rust are due..." Further, the trust agreement provides that the amount due may be determined "by any means of reasonable estimation." (Doc. #9-1 Exhibit 2).

---

[2] As evidenced by the affidavit of counsel Adam F. Segal (doc. #9-1 Exhibit 1), the International Alliance trust funds "attempted to conduct a review of All Access's books and records for the period of April 1, 2008, through March 31, 2010, but All Access failed to produce or make available for inspection its books or records." Specifically, in July of 2010, plaintiffs sent letters requesting that All Access provide the necessary documents, but these letters were returned and it was indicated that the address was "VACANT." (Doc. #9-2 Exhibit 7). Upon the return of the letters, the auditors sent an email to Mr. Cherrie at Access Events (doc. #9-1 Exhibit 8), which yielded the response, "I don't know where any of the paper work is at, who knows?????"

**James C. Mahan**
**U.S. District Judge**

- 8 -

Plaintiffs assert that despite the defendants' failure to provide the records, plaintiffs are in possession of "a few remittance reports that are helpful in reasonably estimating the amount due." Specifically, according to a September 2008 report (doc. #9-3 Exhibit 9), the contributions owed for work performed for that month totaled $5,518.00. It is plaintiffs' position that "based on the little information they do have, it is not unreasonable...to presume that All Access owes monthly contributions similar to what it reported for September of 2008, $5,518, plus additional 10% for each month from the beginning of the audit period (April 1, 2008) to the present (36 months)." (Doc. #9). Plaintiffs conclude that the contribution amount due, after subtracting the amount All Access has paid, is $214,207 for an average monthly contribution of $5,950.00.

### b. Interest/Liquidated Damages

According to plaintiffs' calculations, the total interest due is $56,181.00. They support this figure by multiplying each month's delinquency by .18 and dividing that result by 365 days per year, and then multiplying that number by the number of days that the contribution is overdue. (Doc. #9 at 8-9). In calculating the liquidated damages owed, the plaintiffs take 20% of the unpaid contributions, which is $42,841. However, as the interest due ($56,181.00) exceeds 20% of the unpaid contributions, 28 U.S.C § 1132(g)(2)(C) provides that the plaintiffs may recover liquidated damages in an amount equal to the amount of interest claimed. Therefore, the liquidated damages are $56,181, which is equal to the interest owed.

### c. Attorneys' Fees and Costs

As previously discussed, plaintiffs are entitled to receive reasonable attorneys' fees and costs under ERISA. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have provided the court with the total fees and costs incurred beginning in October 2010, and continuing until March 2011, in the amount of $10,812. Pursuant to Local Rule 54-16, a party requesting attorneys' fees must file a motion demonstrating the reasonableness of the award, an itemization and description of the work performed, an itemization of all costs, and an attorney affidavit. Plaintiffs have complied with the requirements of the local rules, warranting an award of attorneys' fees.

First, plaintiffs contend that the amount sought is based on "the normal billing rates" for the

James C. Mahan
U.S. District Judge

- 9 -

1  firm, and that the amount is reasonable because "(1) the [plaintiffs] were forced to file a [c]omplaint
2  seking delinquent contributions from All Access; (2) the [plaintiffs] were forced to prepare a
3  [m]otion for [d]efault when [d]efendants failed to appear in the case; (3) the [plaintiffs] were forced
4  to prepare a [m]otion for [d]efault [j]udgment when the [c]ourt [c]lerk entered [d]efault against
5  [d]efendants; (4) all fees charged were reasonable and neccessarily incurred for the prosecution of
6  the [plaintiffs'] claims; and (5) the [plaintiffs] were provided with competent and quality
7  representation by experienced ERISA attorneys." (Doc. #9).

8  Second, plaintiffs provided the court with an "itemization and description" of the work
9  performed by the attorneys and paralegals and a "true and accurate" copy of the plaintiffs' legal fees
10 and billing costs. (Doc. #9-4 Exhibit 10). Lastly, as required by the local rules, plaintiffs filed with
11 the court the attorney affidavit of Adam P. Segal (doc. #9-1 Exhibit 1), which states that he reviewed
12 the bills in this case, and that they are "true, correct, and reasonable." Upon reviewing the fees
13 sought and determining their reasonableness, the court is inclined to grant attorneys' fees and costs.

14 In addition to the past fees incurred, plaintiffs argue that the court should award $5,000 in
15 anticipated fees for executing the judgment. To support this, the plaintiffs rely on 29 U.S.C. §
16 1132(g)(2)(E), which states that the court may award any other legal relief it deems appropriate. As
17 Adam P. Segal's affidavit (doc. #9-1 Exhibit 1) corroborates the assertion that awarding the
18 anticipated fees is appropriate because that is the amount it will cost to execute the judgment against
19 the defendants, and it is likely that the defendants will not be cooperative, the court is inclined to
20 award such fees.

21 Accordingly,

22 IT IS HEREBY ORDERED ADJUDGED AND DECREED that plaintiffs' motion for entry
23 of default judgment against defendants All Access Support Group and Access Event Staffing (doc.
24 #9) be, and the same hereby is, GRANTED.

25 IT IS FURTHER ORDERED default be entered against defendants All Access Support
26 Group and Access Event Staffing, jointly and severally, in the amount of $342,381.00 representing
27 delinquent contributions, liquidated damages, interest, administrative fees, attorneys' fees and costs,
28

**James C. Mahan**
**U.S. District Judge**

- 10 -

and costs to execute the judgment.

DATED May 3, 2011.

_____
**UNITED STATES DISTRICT JUDGE**